IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.   03-20227-STA |
| | ) | |
| VERDELL LOGGINS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REVOKING SUPERVISED RELEASE

Before the Court is a Petition to Revoke Supervised Release filed on July 21, 2010. The Court conducted a revocation hearing pursuant to Federal Rule of Criminal Procedure 32.1(b)(2) on December 1, 2010. Based upon the testimony of witnesses and the exhibits entered during the hearing, the Court finds by a preponderance of the evidence that the Defendant Verdell Loggins did violate the condition of his supervised release that he not commit another federal, state or local crime, and that his supervised release should therefore be revoked.

## BACKGROUND

The Defendant was convicted of two counts of Transportation of Stolen Vehicles and Sale or Receipt of Stolen Vehicles under 18 U.S.C. §§ 2312, 2313, and sentenced in March 2004 to sixty (60) months of incarceration to be followed by twenty-four (24) months of supervised release. The Defendant began his term of supervised release on August 7, 2009, and it was set to expire on August 6, 2011.

1

On July 21, 2010, the Defendant's probation officer filed the Petition before the Court alleging that the Defendant had violated the condition of his release that he not commit another federal, state or local crime.  The Petition specifically alleges that on or about September 15, 2009, an individual identified as Gregory Chaffin ("Chaffin") responded to a listing for a vehicle on Craig's List and immediately began negotiations with the Defendant for the purchase of a 2005 5-Series BMW automobile.  The Petition further alleges that Chaffin made three payments to the Defendant totaling $4,002.00 toward the purchase of the vehicle but that the vehicle was never delivered to Chaffin.

The Court conducted a revocation hearing on December 1, 2010, and received the testimony of Chaffin, Chaffin's half-brother Corey Hays ("Hays"), and the Defendant.  Chaffin testified that he owned a Honda Accord automobile but wanted to purchase a BMW.  He began searching the internet and came across a website ad which stated that any type vehicle you wanted could be obtained by contacting the telephone number listed on the website.  Chaffin called the number and the Defendant answered.  The Defendant suggested that they meet in person, and Chaffin went to the designated location and got into a vehicle with the Defendant. The Defendant discussed some vehicles that were listed in the website, but Chaffin wanted a 5-Series BMW. According to Chaffin, the Defendant stated that he did not have one but could get one that would not cost more than ten thousand dollars ($10,000.00).  The Defendant explained that the vehicle would be salvaged and that was why the price would not be more than $10,000.  The Defendant told Chaffin that he would need a down payment and Chaffin gave the Defendant two thousand dollars ($2,000.00) in cash.  Defendant did not provide Chaffin with a receipt.

A week or two later, the Defendant called Chaffin and told him that he needed more money.  By that time Chaffin had already sold his Honda Accord to his aunt, and so Chaffin went to Southern Financial Federal Credit Union and purchased a cashier's check payable to the Defendant in the amount of sixteen hundred dollars ($1,600.00).  A copy of the cashier's check dated September 15, 2009 was introduced into evidence as Revocation Hr'g, Ex. 2.  The cashier's check was made payable to the Defendant and was endorsed by the Defendant.  The Defendant told Chaffin that he would have the car in a couple of weeks.

When Chaffin did not hear from the Defendant, Chaffin's mother called the Defendant and told him that he must either give Chaffin his money back, provide Chaffin with the vehicle, or answer to the police.  Thereafter, the Defendant called Chaffin and said he could pick up the car in Texas but needed more money.  Chaffin told the Defendant that he did not have anymore money at the time.  The Defendant called again later and said he was in Mississippi and had found a BMW.  Again he told Chaffin that he needed more money.  Chaffin then went to Western Union and wired ninety dollars ($90.00) to the Defendant in Batesville, Mississippi.  A copy of the Western Union wire receipt was entered into evidence as Exhibit 3.  *See* Revocation Hr'g, Ex. 3.  That receipt indicates that Chaffin wired ninety dollars to Verdell Loggins on October 22, 2009.

After Chaffin did not hear from the Defendant again, he tried to call him.  However, the telephone number that Chaffin had for the Defendant was no longer in service.  Chaffin testified that he then obtained a new number for the Defendant and called him and left a message.  The Defendant returned Chaffin's call but hung up before any resolution was reached.  When Chaffin tried to call the Defendant back at the new number, it too was no longer in service.  Chaffin then

3

contacted the Memphis Police Department and picked the Defendant out of a photo line-up as the person he knew as Verdell Loggins.  Chaffin also contacted the Defendant's probation officer whom he identified after having a back ground check done on the Defendant.

The Court next heard the testimony of Hays, Chaffin's half-brother.  Hays testified that he and the Defendant were incarcerated at the Federal Correctional Institute ("FCI") in Millington, Tennessee at the same time.  He stated that he only knew the Defendant as a recreational coach at FCI and that he may have seen the Defendant one time since they were both released from prison. However, he denied that he knew the Defendant well and denied that he was involved in helping Chaffin purchase the BMW.

Finally, the Court received testimony from Defendant himself.  The Defendant stated that he and Hays were cellmates at FCI.  According to the Defendant, he and Hays were talking about a car, and that is how Chaffin became involved.  Defendant claimed that another individual identified as "Sutton" was the person who owned or could obtain the BMW that Chaffin wanted. Defendant stated that he was only trying to serve as an intermediary between Chaffin and Sutton because Chaffin and Hays told him that they could help his daughter find a job.  The Defendant further claimed that he had good credit and that Sutton said he would sell the BMW to Chaffin if the Defendant would co-sign a promissory note payable to Sutton for the balance of what Chaffin owed on the BMW.   Defendant testified that Sutton gave Chaffin a receipt for the $1,600.  Defendant denied that Chaffin ever gave him $2,000 in cash or that he ever placed an ad on Craig's List.  Defendant claimed that he did not even know how to use the internet at the time all of this occurred.  As for his relationship with Hays, Defendant stated that he picked Hays up and drove him to his job at Mud Island after they were released from prison.  Hays admitted

4

during cross-examination that he worked briefly at Mud Island after he was released from custody but denied that the Defendant ever gave him a ride to work. Hays testified that he never had any contact with the Defendant other than when he may have seen Defendant while he was getting his driver's license. Defendant countered that he would not have even known that Hays worked at Mud Island were it not for the fact that he gave Hays a ride to work on one occasion.

## **ANALYSIS**

The Court may revoke an individual's supervised release if it finds a violation of a condition of supervised release by a preponderance of the evidence.[1] The Court's disposition of a case involving violations of conditions of supervised release is governed by 18 U.S.C. § 3583,[2] which provides in part that a district court may, after considering all relevant factors:

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. . . .[3]

The Court has broad discretion in determining whether a condition of supervised release has been violated.[4] In a hearing on violations of supervised release, the Court acts as fact-finder and assesses the credibility of the testimony presented.[5]

---

[1] 18 U.S.C. § 3583(e)(3); *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000).

[2] Fed. R. Crim. P. 32.1(d).

[3] § 3583(e)(3). *See also* Fed. R. Crim. P. 32.1(b).

[4] *United States v. Stephenson*, 928 F.3d 728, 732 (6th Cir. 1991).

[5] *United States v. Price*, No. 00-3385, 2000 WL 1909388, at * 4 (6th Cir. Dec. 28, 2000).

Based on the credible evidence presented at the revocation hearing, the Court concludes by a preponderance of the evidence that Defendant has violated a condition of his supervised release. The Court credits in large part the testimony of Chaffin and finds additional support for his account in the exhibits entered during the hearing. Certainly, there are portions of Chaffin's testimony that are difficult to understand, such as why he would give $2,000 in cash to an individual whom he claims to have just met and for a vehicle that was described as only a 5-Series BMW. There was no testimony offered during the hearing about the model, color, condition or even a firm delivery date for the vehicle. The Court even questioned during the hearing whether it was realistic to believe that anyone would willingly give $2,000 in cash to an individual whom they did not know. However, that concern is somewhat offset by the fact that Chaffin was only 22 years-old when the transaction occurred. Chaffin apparently had his heart set on buying a BMW, and the normal reservations that one might expect from someone with more age and maturity about giving cash to a virtual stranger were outweighed by his desire for the vehicle. The Court has no reason to doubt Chaffin's credibility: Chaffin has no criminal record, graduated from high school and works full-time as an elderly care giver. Furthermore, Chaffin's account of events is supported in part by the exhibits introduced during the hearing. The cashier's check in the amount of $1,600 was made payable to the Defendant and the Defendant did not deny that he endorsed the check. The government also presented evidence of the wire transfer for $90 to the Defendant. Defendant never denied that he was the recipient of the money. So, in the final analysis while some of Chaffin's rendition of what occurred might be suspect, the Court finds that Chaffin was a credible witness with documentary evidence to support some of his testimony.

By contrast, the Court finds Defendant's account of what occurred totally unsupported. Defendant claims that he was just an intermediary between Chaffin and Hays who wanted to purchase a vehicle from Sutton. Defendant testified that he was willing to co-sign a promissory note for them for the balance due on the BMW because Chaffin and Hays were going to help his daughter find a job. But, no other witnesses were called who could substantiate the Defendant's story even in part. Sutton was not called as a witness and no explanation was offered as to why he did not testify. The Defendant testified that he had known Sutton for a long time and that he had a good enough relationship with Sutton that Sutton would finance part of the purchase price of Chaffin's vehicle if the Defendant would co-sign for Chaffin. Surely if the Defendant and Sutton had that kind of relationship, one would expect that Sutton would have appeared on the Defendant's behalf or that he would have been subpoenaed. Additionally, the Defendant's daughter did not testify even though she apparently resides in Memphis. If nothing else, she could have testified about her alleged lack of employment and the efforts Defendant made to help her secure a job.

Overall, the Court finds that Defendant's testimony was not credible. As the government elicited during its cross-examination of the Defendant, Defendant most recently served two separate five-year sentences for auto theft, giving Defendant a great deal to lose should the Court find that he violated the conditions of his supervised release. The Defendant did offer letters of reference from individuals who stated that he is a changed man trying to abide by the law and contribute to his community and church in a variety of ways. *See* Revocation Hr'g, Ex. 5. The Court has considered those letters. The fact remains that none of the individuals who sent letters of support for the Defendant have knowledge of what occurred in this instance. The Court does

not doubt that the Defendant has made attempts to improve himself and his situation since this incident occurred. In the final analysis, however, the Court finds Chaffin's testimony to be more reliable and supported by the exhibits to the hearing. As such, the Court concludes that the Defendant violated a condition of his supervised release by committing another state and/or local crime.

As the Court indicated at the conclusion of the revocation hearing, a separate hearing will be set to determine what sentence should be imposed for Defendant's violation of his conditions of supervised release. The Clerk of the Court is directed to schedule a sentencing hearing in due course.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 6th, 2010.